IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DONNA HOLDERFIELD,            )
                              )
        Plaintiff,            )
                              )
v.                            )        Civil Action No. 1:20-cv-01599 (RDA/IDD)
                              )
THYSSENKRUPP ELEVATOR         )
CORPORATION, *et al.*,        )
                              )
        Defendants.           )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Defendant Thyssenkrupp Elevator Corporation's ("Private Defendant") Motion to Dismiss for Failure to State a Claim (Dkt. 6) as well as Defendants United States of America, Department of Defense, Department of the Army, and National Geospatial Intelligence Agency's ("Federal Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 22) and Motion to Dismiss for Failure to State a Claim (Dkt. 23). The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). These motions are now fully briefed and ripe for disposition.

Considering the Motions together with Private Defendant's Memorandum in Support (Dkt. 7), Plaintiff's Opposition (Dkt. 61), Private Defendant's Reply (Dkt. 62), Federal Defendants' Memorandum in Support (Dkt. 24), Plaintiff's Opposition (Dkt. 39), and Federal Defendants' Reply (Dkt. 49), the Court GRANTS Private Defendant's Motion to Dismiss for Failure to State a Claim, GRANTS Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, and DENIES AS MOOT Federal Defendants' Motion to Dismiss for Failure to State a Claim for the reasons that follow.

## I.  BACKGROUND

### A.  Factual Background

In her Complaint, Plaintiff Donna Holderfield ("Plaintiff"), alleges five counts sounding in tort and contract against Federal Defendants and Private Defendant ("Defendants"), seeking $600,000.00 in damages plus associated costs with litigating the case and interest.  Dkt. 1 at 14. Plaintiff alleges that Defendants are liable to Plaintiff as a result of (1) a violation of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*; (2) negligence; and (3) negligence *per se*; (4) breach of contract; and (5) *respondeat superior*.  Dkt. 1 ¶¶ 16-45.  This Court accepts all facts alleged within the Amended Complaint as true, as it must at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

At the time of the incident, Plaintiff worked as a contractor with Booz, Allen & Hamilton ("BAH") and was staffed on a contract with the National Geospatial Intelligence Agency ("NGA").  On August 31, 2017, Plaintiff alleges she was an invitee of the premises located at 7500 Geoint Drive in Springfield, Virginia.  While using the elevator, Plaintiff alleges she sustained "serious and permanent personal injuries" when the elevator malfunctioned, dropped nearly four stories, and then stopped abruptly.  Dkt. 1 ¶¶ 13, 26.

Plaintiff alleges that Private Defendant was responsible for the maintenance and repair of the elevator in which she sustained her alleged injuries.  *Id.* ¶¶ 8, 13.  In like manner, Plaintiff also alleges that Federal Defendants "controlled, owned, operated, supervised, inspected, maintained, and/or repaired the premises, including the elevator."  *Id.* ¶ 14.  Lastly, Plaintiff alleges that Defendants contracted with each other to obtain the rights to control, own, operate, supervise, inspect, maintenance, and/or repair the premises, including the elevator.  *Id.* ¶ 37.

### B.  Procedural Background

On December 29, 2020, Plaintiff filed her Complaint.  Dkt. 1.  On March 15, 2021, Private Defendant filed its motion to dismiss for failure to state a claim and an accompanying Memorandum in Support.  Dkt. Nos. 6; 7.  Seeking leave before this Court on April 9, 2021, Plaintiff received an extension of time to respond to Private Defendant's Motion until June 1, 2021.  Dkt. Nos. 17; 18.  On April 21, 2021, Federal Defendants filed their Motions to Dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim along with a Memorandum in Support.  Dkt. Nos. 22; 23; 24.  Plaintiff timely filed her Opposition in response to Federal Defendants' Motions to Dismiss on June 1, 2021.  Dkt. 39.  However, Plaintiff also filed her Opposition to Private Defendant's Motion to Dismiss, which exceeded the page limitation.  Dkt. 42.  On June 7, 2021, Federal Defendants filed their Reply.  Dkt. 49.  Following reassignment, on February 2, 2022, the Court issued an order striking Plaintiff's Opposition to Private Defendant's Motion to Dismiss and set a new briefing schedule requiring a revised brief to be filed no later than February 16, 2022.  Dkt. 56.  Two days later, Plaintiff sought leave to file her brief in excess of the page limitations of the Court's local rules, which the Court granted in part and denied in part.  Dkt. Nos. 57; 60.  The Order also reset the briefing schedule, requiring that Plaintiff file her Opposition no later than February 22, 2022.  Plaintiff filed her Opposition on February 22, 2022 and Private Defendant filed its Reply on February 27, 2022.  Dkt. Nos. 61; 62.

### II.  STANDARD OF REVIEW

Federal Rules of Civil Procedure Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction.  Defendants can challenge subject matter jurisdiction through a facial challenge to the complaint or a factual challenge to the allegations therein.  *Kerns*

*v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  A facial challenge argues that the complaint fails to allege facts sufficient to support a finding that a court has subject matter jurisdiction.  *Id.* Thus, if the Rule 12(b)(1) motion is a facial challenge, "'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'"  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  As such, the factual allegations of the complaint are treated as true.  *Id.*  In contrast, a factual challenge argues that the "'jurisdictional allegations of the complaint'" are not true.  *Id.* (quoting *Adams*, 697 F.2d at 1219).  Accordingly, in a factual challenge, there is no presumption that the facts in the complaint are true.  *Id.*  A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.

2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

### A. Federal Defendants' Motion to Dismiss for Lack of Jurisdiction

Federal Defendants argue that this Court lacks jurisdiction over Plaintiff's Federal Tort Claims Act ("FTCA") claims. First, Federal Defendants argue that the Virginia Workers' Compensation Act provides the exclusive remedy for Plaintiff's workplace injuries and thus Plaintiff cannot recover for her workplace injuries in a negligence lawsuit. Dkt. 24 at 7-14. Federal Defendants argue that the facts in this case meet the Virginia Workers' Compensation Act's ("VWCA") threshold requirements: (1) the government is Plaintiff's statutory employer; and (2) the accident in question arose out of and in the course of Plaintiff's employment. In support of (1), Federal Defendants claim that federal courts have regularly held that government contractor employees are "statutory employees" of the federal government, such that the VWCA provides the exclusive remedy for workplace injuries. *See, e.g.*, *Landon v. United States*, 816 F.

App'x 853 (4th Cir. 2020).  In addition, Federal Defendants argue that Plaintiff provided services in support of the NGA's mission to provide geospatial intelligence, and thus her contracted work was part of NGA's "trade, business or occupation."  In support of (2), Federal Defendants argue that a purported elevator malfunction in the parking garage "arises out of" Plaintiff's employment and took place "in the course of" normal business hours at NGA's premises where Plaintiff was performing work.  Dkt. 24 at 13-14.

In the alternative, Federal Defendants argue that the independent contractor exception to the FTCA applies here.  This is because the United States has contracted out the day-to-day inspection, maintenance, and repair responsibilities to an independent contractor, AECOM.

With respect to Count IV, Federal Defendants argue that the Court lacks jurisdiction over Plaintiff's breach of contract claim because it lacks jurisdiction to consider a breach of contract claim seeking $600,000.00 in damages.  Dkt. 24 at 18-20.  Federal Defendants claim that district courts have concurrent jurisdiction with the Court of Federal Claims for non-tort claims "not exceeding $10,000 in amount."  28 U.S.C. § 1346(a)(1).  Additionally, Federal Defendants argue that this Court lacks jurisdiction over breach of contract claims under Virginia law because Plaintiff was not a "clearly intended beneficiary" of the contract between the United States and AECOM.  In Virginia, a third party may sue for breach of contract only when the original parties to the contract intended "to bestow a benefit upon the third party."  *Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt., Inc.*, 725 S.E.2d 550, 553 (Va. 2012).

In response, Plaintiff first argues that the NGA is not Plaintiff' statutory employer.  In support of this proposition, Plaintiff argues that her position is not part of the same "trade,

business or occupation" as NGA.[1]  According to Plaintiff, NGA's mission is to trade, collect, analyze and prepare *imagery* data for the defense/intelligence community; however, Plaintiff is an analytical methodologist, *i.e.*, a statistician, who provided statistical analysis on certain datasets, but did not collect and process *imagery* data.  Dkt. 39 at 6-12.  In addition, Plaintiff's W-2 form issued by BAH specifically states that she is not a "statutory employee" of NGA and NGA's "authoritative" publication describes in detail the function of the NGA, but does not mention that NGA uses analytical methodologists or statisticians in its activities or mission.  *Id.*

Second, Plaintiff argues that the independent contractor exception to the FTCA does not apply here because NGA's duty to maintain a safe premise is a non-delegable duty.  *Id.* at 13-16.  In support of this proposition, Plaintiff claims that: "Virginia law imposes a non-delegable duty on the part of a private individual to make safe and/or warn of dangerous conditions of which they knew or should have known about." *Id.* at 15.  In the alternative, Plaintiff claims that even if this duty could be delegated to the independent contractor, NGA's contract with ESMARTS SOW does not delegate the duty to warn potential users of the elevator of dangerous or unsafe conditions.  *Id.* at 15-16.  In addition, Plaintiff argues that the property owner never relinquishes ultimate responsibility for the safe condition of the premises.  *Id.* at 16.

Third, Plaintiff argues that the Court has supplemental jurisdiction over Plaintiff's breach of contract claim (Count IV) because it "involves the same historical transaction, event, facts, and parties as the tort-based claims."  *Id.*  In addition, Plaintiff argues that she is a third-party beneficiary of the contract between NGA and ESMARTS SOW.  In support of this argument, Plaintiff claims that, under the contract, ESMARTS SOW is responsible for "the safety of

---

[1] Federal Defendants correctly observe that Plaintiff does not contest that the claimed injuries "arose out of and in the course of" Plaintiff's work at NGA.  Dkt. 49 at 3 n.1.

workers, public, and the protection of the environment." *Id.* at 17.

### Sovereign Immunity and the FTCA

Absent an explicit statutory waiver, sovereign immunity shields the United States from civil suits. *Kerns*, 585 F.3d at 194. In enacting the FTCA, Congress waived sovereign immunity for certain torts committed by federal employees. *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The FTCA allows for monetary relief for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). However, the FTCA's limited waiver allows for liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*; *Kerns*, 585 F.3d at 194 ("An action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred."); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). To that end, the FTCA "plac[es] the government on the same footing as a private person with regard to certain types of claims." *Bosman v. United States*, 2012 WL 5957354, at *4 (E.D. Va. Nov. 27, 2012) (quoting *Coulter v. United States*, 256 F. Supp. 2d 484, 488 (E.D. Va. 2003)). Furthermore, because the FTCA provides for a waiver of sovereign immunity, courts construe the FTCA strictly, and all ambiguities are resolved in favor of the United States. *Radin v. United States*, 699 F.2d 681, 685 (4th Cir. 1983).

### VWCA

Because the FTCA's limited waiver allows for liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law

of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), the Court must also consider whether the VWCA would bar a claim against a private defendant under like circumstances.  Under the VWCA, if the United States qualifies as the plaintiff's statutory employer, and if the plaintiff's injury is the result of an accident arising out of and in the course of employment, then the plaintiff's remedies under the VWCA are exclusive and she is barred from pursuing her claims for tort damages against the United States.  *See* Va. Code § 65.2–307 (providing that "[t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee"); *see also Coulter*, 256 F. Supp. 2d at 488; *Hendricks v. Wal-Mart Stores, Inc.*, 142 F. Supp. 2d 752, 754 (W.D. Va. 2001).

> A statutory employer is defined by the VWCA, in relevant part, as follows:
>
> When any person (referred to in this section as 'owner') undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (referred to in this section as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2–302 (emphasis added).  Ordinarily, to determine whether an employee of a subcontractor was performing work that is part of the owner's "trade, business or occupation," a court would consider whether the work performed by the subcontractor "is, in that business, *normally* carried on through employees rather than independent contractors."  *Coulter*, 256 F. Supp. 2d at 489 (quoting *Shell Oil v. Leftwich*, 212 Va. 715, 722 (1972)) (emphasis in original); *see also Pendley*, 856 F.2d at 701.  But "a modified test is applicable where the potential statutory employer is governed by statutes or regulations that define the scope of the entity's

business." *Coulter,* 256 F. Supp. 2d at 489.  An employer governed by statutes or regulations, such as the government here, is subjected to a slightly modified test.  *Coulter,* 256 F. Supp. 2d at 489.  Under that test, "the scope of a governmental entity's trade or business is governed by a consideration of what the entity is 'authorized and empowered by legislative mandate to perform.'"  *Id.* at 490 (citing *Roberts v. City of Alexandria*, 246 Va. 17, 19 (1993) (citing *Ford v. City of Richmond*, 239 Va. 664, 669 (1990))); *see also Pendley,* 856 F.2d at 702 (citing *Henderson v. Cent. Tel. Co. of Virginia,* 233 Va. 377, 383-84 (1987)).

In addition, for the VWCA to be the plaintiff's exclusive remedy, thus barring this tort suit against her statutory employer, the plaintiff's injury must also be an "injury by accident arising out of and in the course of the employment."  Va. Code § 65.2–101 (defining "injury").  "The words 'arising out of' refer to the origin or cause of the injury, while the words 'in the course of' refer to the time, place, and circumstances under which the accident occurred."  *Hendricks*, 142 F. Supp. 2d at 754.  "An accident occurs 'in the course of' the employment if it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling the duties of the employment or is doing something reasonably incidental to it."  *Id.* at 755.  "An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed."  *United Parcel Serv. of Am. v. Fetterman*, 230 Va. 257, 258 (1985).  "Virginia courts apply an 'actual risk test,' meaning that the employment must expose the employee to the particular danger causing the injury, notwithstanding the public's exposure generally to similar risks."  *Hendricks*, 142 F. Supp. 2d at 755.  Under the actual risk test,

> if the injury can be seen to have followed as a natural incident of the work and to
> have been contemplated by a reasonable person familiar with the whole situation

10

as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.  But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.  The causative danger must be peculiar to the work and not common to the neighborhood.  It must be incidental to the character of the business and not independent of the relation of master and servant.  It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Simms v. Ruby Tuesday, Inc.*, 281 Va. 114, 122-23 (2011) (alterations in original).  Any question regarding the scope of the actual risk standard was resolved by the Supreme Court of Virginia in *Simms*.

### 1. Counts I, II, III, and V

As a threshold issue, because the parties agree that the alleged tortious conduct and resulting injury occurred in Virginia, Virginia law governs the extent of Defendants' liability. *See Coulter*, 256 F. Supp. 2d at 488 (explaining that in determining whether a state workers' compensation statute bars a claim, the law of the state where the injury occurred governs) (citing *Home Indem. Co. of N.Y. v. Poladian*, 270 F.2d 156, 160 (4th Cir. 1959)).  Accordingly, the Court must consider whether, under Virginia law, the VWCA bars Plaintiff's negligence claim against Defendants for her work-related injuries.

Because the United States qualifies as Plaintiff's statutory employer, and Plaintiff's injury is the result of an accident arising out of and in the course of employment, Plaintiff's remedies under the VWCA are exclusive and she is barred from pursuing her claims for tort damages against the United States.  Va. Code § 65.2–307; *see also Coulter*, 256 F. Supp. 2d at 488.  For this reason, the Court lacks jurisdiction over Plaintiff's FTCA claims (Counts I, II, III, and V).

The United States is Plaintiff's statutory employer under the VWCA.  Plaintiff was

executing work which was part of the trade, business, or occupation of the NGA because the contract between NGA and BAH was carried out pursuant to the function of NGA to provide timely and accurate geospatial intelligence.  *See, e.g.*, 10 U.S.C. § 442(b) ("The National Geospatial-Intelligence Agency shall improve the means for safe navigation by providing, under the authority of the Secretary of Defense, accurate geospatial information for use by the departments and agencies of the United States, the merchant marine, and navigators generally."); *id.* § 442(e) ("The National Geospatial-Intelligence Agency may, in furtherance of a mission of the Agency, design, develop, deploy, operate, and maintain systems related to the processing and dissemination of imagery intelligence and geospatial information that may be transferred to, accepted or used by, or used on behalf of" the armed forces or any other department or agency in the United States.).  Plaintiff, as an analytical methodologist, was tasked with "develop[ing] and apply[ing] methods to identify, collect, process, and analyze large volumes of data to build new and enhance existing GEOINT products, processes, and systems" and "us[ing] analytic tools and techniques such as GIS, data visualization, modeling, systems analysis, and comparative analysis to create structured data environments to address complex military and intelligence problems," among other responsibilities.  Dkt. 24-2 at 67.  The work Plaintiff conducted at the NGA facility was the type of work that NGA is authorized to undertake.  *See Pendley*, 856 F.2d at 702 (United States Air Force "operating under statutes and regulations as it does in the development of space weapons systems" was statutory employer of employee of independent contractor hired to provide engineering consulting and analysis services at Air Force research facility); *Borders v. United States*, 1:13-cv-1154 (E.D. Va. Apr. 30, 2014) (finding that NGA was statutory employer of employee of independent contractor hired to perform various security functions inside the NGA building); *Lawrence v. United States*, 972 F.2d 340 (4th Cir. 1992)

(holding that United States was statutory employer of employee of independent contractor hired to paint Navy ships); *Muldrow v. United States*, 972 F.2d 341 (4th Cir. 1991) (affirming district court finding that United States was statutory employer of employee of independent contractor hired to perform grounds maintenance work on Navy base); *Coulter*, 256 F. Supp. 2d at 493 (United States Marine Corps, which was required by statute to provide enlistees with meals, was statutory employer of employee of subcontractor hired to provide cooking services at Marine Corps base).

Plaintiff's claim that her contracted-for work is not a part of the agency's "trade, business, or occupation" because analytical methodologists provide statistical analysis on certain datasets, but do not collect and process imagery data, is unavailing. As indicated by the cases noted above, the Fourth Circuit and the Eastern District of Virginia have adopted a broader view of what agencies are required or authorized by law to do. *See, e.g.*, *Borders v. United States*, 1:13-cv-1154 (E.D. Va. Apr. 30, 2014) (deciding that NGA was statutory employer of employee of independent contractor hired to perform various security functions inside the NGA building). Plaintiff also argues the Statement of Work between NGA and BAH is "incorrect" as to certain responsibilities of the analytical methodologist. However, "[w]hether the Government or a Government contractor actually performs the work is irrelevant in determining the Government's "trade, business or occupation," provided that statutes or regulations authorize the work in question. *Lawrence*, 972 F.2d at 340. Accordingly, the government is Plaintiff's statutory employer as defined by the VWCA.

As noted above, Plaintiff does not contest that the claimed injuries "arose out of and in the course of" Plaintiff's work at NGA. *See* Dkt. 49 at 3 n.1. Therefore, Plaintiff has essentially conceded this issue. *United Supreme Council, 33 Degree of Ancient & Accepted Scottish Rite*

*of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of United States v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, 329 F. Supp. 3d 283, 294 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim.").

Accordingly, the Court need not reach Defendants' remaining arguments and finds that Plaintiff has not pleaded a facially plausible basis for Counts I, II, III, and V.

### 2. Count IV

The Court does not have original jurisdiction over Plaintiff's breach of contract claim because it exceeds $10,000.00 in amount. *See* 28 U.S.C. § 1346(a)(1) (providing that district courts have concurrent jurisdiction with the Court of Federal Claims for non-tort claims "not exceeding $10,000 in amount."). The Court does not have supplemental jurisdiction over Plaintiff's breach of contract claim (Count IV) because it does not have original jurisdiction over the related tort-based claims (Counts I, II, III, and V). *See Barnett v. United States*, 193 F. Supp. 3d 515, 521 (D. Md. 2016) (finding no supplemental jurisdiction over Plaintiff's state law claims where Court lacked subject matter jurisdiction over Plaintiff's FTCA claim). Accordingly, this Court need not reach Defendants' remaining arguments.

### B. Federal Defendants' Motion to Dismiss for Failure to State a Claim

Finally, Federal Defendants argue that all counts should be dismissed for failure to state a claim. Federal Defendants argue: (1) Counts I and II fail to state a claim because Plaintiff does not plead any factual allegations that make it facially plausible that the United States is a common carrier; (2) Count III should be dismissed because Plaintiff fails to plead a plausible claim for negligence *per se*; (3) Count IV should be dismissed because Plaintiff has not properly pleaded any contractual damages stemming from her breach of contract claim; and (4) Count V should

be dismissed because a standalone claim of *respondeat superior* is not cognizable against the United States.

In response to the argument that Counts I and II fail to state a claim upon which relief may be granted, Plaintiff argues that NGA is a common carrier under Virginia law as the owner of an elevator. *Id.* at 19-22 (citing *White v. Sears, Roebuck and Co.*, 242 F.2d 821, 823 (4th Cir. 1957) ("[I]n Virginia owners of elevators are common carriers and held to the highest degree of care known to human prudence.")). In support of her argument that Count III states a claim upon which relief may be granted, Plaintiff claims that she is unable to identify a specific code provision that NGA violated absent an opportunity for discovery; she maintains that her Complaint should not be dismissed for that reason. *Id.* at 22-24. In addition, Plaintiff asserts that she has sufficiently pleaded the elements of negligence *per se*. In support of her argument that Count IV states a claim upon which relief may be granted, Plaintiff argues that she is entitled to seek consequential damages for the Federal Defendants' breach of duties owed to her as a third-party beneficiary. *Id.* at 24-25. In support of her argument that Count V states a claim upon which relief may be granted, Plaintiff argues that the independent contractor exception of the FTCA does not bar claims of *respondeat superior*. *Id.* at 25-26.

Because this Court has determined that it lacks subject matter jurisdiction over all counts Plaintiff asserts against the Federal Defendants, the Motion to Dismiss for Failure to State a Claim is moot.

### C.  Private Defendant's Motion to Dismiss for Failure to State a Claim

#### 1.  Counts I and II

Plaintiff alleges two counts of negligence against Private Defendant under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, and as a matter of common law, because Plaintiff

claims Private Defendant is a common carrier.  When Private Defendant contracted to provide elevator repair and maintenance services to Federal Defendants, Plaintiff argues that Private Defendant transformed into a common carrier and assumed a "duty to use the highest degree of practical care for the safety of their passengers such as the Plaintiff." Dkt. 1 ¶¶ 22, 25.  In support of her allegations, Plaintiff cites to a host of Virginia state court decisions as a foundation for Plaintiff's view that Private Defendant's "provision of inspection, maintenance and repair work under a contract renders it liable . . . for negligent actions and omissions under Virginia Law." Dkt. 61 at 11-14.[2]

In response, Private Defendant maintains that Plaintiff asserts no viable cause of action against Private Defendant under the FTCA because Private Defendant is just that—a private party against which the FTCA is inapplicable.  As to the core issue of negligence, Private Defendant submits that it owed no common law duty of care to Plaintiff and that the contract with Federal Defendants does not fasten such a duty of care onto Private Defendant.  Moreover, Federal Defendants argue that Plaintiff's case law detours from the question at hand: whether Private Defendant, as a contracting party responsible for maintenance and repair of the elevator *but not the owner of the elevator*, may be considered a common carrier.  From Private Defendant's vantage, Plaintiff relies on cases involving public property not implicated here and repeatedly and improperly calling Private Defendant's failure to act a "misfeasance"—a cognizable basis to assert a duty of care—rather than "nonfeasance"—a generally non-cognizable basis to assert a duty of care.

---

[2]  Because this Court is constrained at the motion to dismiss stage to limit its review to the four corners of the Complaint, this Court does not consider any argument advanced by Plaintiff that builds off of additional allegations not contained in the Complaint. *Linlor*, 263 F. Supp. 3d at 618 (E.D. Va. 2017) ("Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.") (citing *Goldfarb*, 791 F.3d at 508).

Under the FTCA, Congress provides prospective plaintiffs a limited waiver of sovereign immunity to permit certain actions against the Federal Government for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of her office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Here, Plaintiff has not shown why a negligence claim against Private Defendant would be cognizable under the FTCA, given that Private Defendant is not a Federal Government entity. Thus, this Court will dismiss Count I of the Complaint as to Private Defendant.

For state law tort claims in Virginia, whether there can be an actionable negligence claim against a defendant depends on whether a "legal duty, a violation of the duty, and a consequent injury" exist as to a cause of action alleged by a plaintiff. *Gray v. Inova Health Care Servs.*, 257 Va. 597, 599 (1999); *see also Jeld-Wen, Inc. v. Gamble*, 256 Va. 144, 147 (1998) ("Without a legal duty there can be no cause of action for an injury."). The question of "whether a legal duty in tort exists is a pure question of law." *Kellermann v. McDonough*, 278 Va. 478, 487 (2009). "A tort may be described as a wrong independent of contract, for which the appropriate remedy is a common law action." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81 (2019) (quoting J.F. Clerk & W.H.B. Lindsell, The law of Torts 1 (1889)); *see also id.* ("A tort, then, is any wrong not consisting in mere breach of contract, for which the law undertakes to give to the injured party some appropriate remedy against the wrong-doer.") (quoting Thomas M. Cooley, The Elements of Torts 2 (1895)). Courts must therefore determine "whether a cause of action sounds in tort, contract, or both" which requires ascertaining the "source of the duty violated." *Tingler*, 298 Va. at 81 (quoting *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 458 (2017)).

The Virginia source-of-duty inquiry asks:

If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort.  If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998).  "Framed this way, the source-of-duty rule attempts to mark off the boundaries of civil liability and to protect our jurisprudence from the modern trend that is intent on 'turning every breach of contract into a tort.'"  *Tingler*, 298 Va. at 82-83 (quoting *MCR Fed., LLC*, 294 Va. at 458).  Indeed, the Virginia Supreme Court has recently expressed concern over the vagaries of applying the modern "Contort trend toward amalgamating contract tort law into a grand legal 'syncretism.'"  *Id.* at 83 (quoting Grant Gilmore, The Death of Contract 98 (Ronald K.L. Collins ed., 2d ed. 1995)).  To combat this trend, the Virginia Supreme Court holds to the traditional view that "there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made."  *Id.* at 84 (quoting William L. Prosser & W. Page Keeton, Prosser and Keeton on the Law of Torts § 92, at 657 (Dan B. Dobbs et al. eds., 5th ed. 1984) (hereinafter "Prosser & Keeton")).  By contrast, "misfeasance" is "a lawful act performed in a wrongful manner."  *Id.* (quoting Black's Law Dictionary 1265 (11th ed. 2019)).  The fundamental difference between the two is that, beyond simply drawing the line between action and inaction, a court must ask if the alleged tortious conduct "has gone so far that it has begun to affect the interests of the plaintiff beyond the expected benefits of the contract itself" converting the defendant's action into a "positive act assuming the obligation."  *Id.* at 85 (quoting Prosser & Keeton, at 662).

18

Courts have found non-feasance, and therefore no basis for tort liability, when a landlord has a contractual duty to repair a leased premises under a tenant's exclusive control.  *Isbell v. Commercial Inv. Assocs., Inc.*, 273 Va. 605, 611 (2007) (holding that a landlord cannot generally be "liable in tort for injuries sustained by the tenant as a result of the landlord's breach of a covenant to make such repairs"); *see also Luedtke v. Philips*, 190 Va. 207, 211-12 (1949) (naming fraud or concealment as exceptions to not holding landlords liable in the injury context). And while Virginia recognizes "on many occasions that 'it is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully," that principle has been applied "in a very narrow set of cases."  *See Bosworth v. Vornado Realty L.P.*, 83 Va. Cir. 549, 2010 WL 8925838, at *7 (Dec. 20, 2010) (quoting *Kellermann*, 278 Va. at 489).  That narrow set of cases has been limited to "wrongful death, wrongful birth, and one specific type of negligent driving case[.]"  *Id.* (collecting cases).

Accepting each of Plaintiff's allegations as true in the Complaint and assessing Virginia law precedent, this Court cannot find as a matter of law that Private Defendant owed any common law duty to Plaintiff.  Rather, the source of Private Defendant's duty arises entirely from the *private* agreement to provide elevator repair and maintenance services to Federal Defendants.  *See Tingler*, 298 Va. at 92 (finding no independent ground of tort liability where the claims alleging personal injury were "caused by conditions created during the [contracted-for responsibility]").  But for the contract, Plaintiff would have no relationship with the Private Defendant and therefore the alleged personal injury is "'entwined with a breach of the contract' and do[es] not reasonably fall 'outside of the contract relationship'" between Private Defendant and Federal Defendants.  *Id.* at 92-93 (quoting *Dunn Constr. Co.*, 278 Va. at 268).  To hold otherwise would be forcing a square peg of tort into the round hole of contract.  *See Holles v.*

19

*Sunrise Terrace, Inc.*, 257 Va. 131, 136 (1999) ("To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract.").  More so, as discussed *infra* as to Count IV of the Complaint, Plaintiff's relationship as a result of the contract between Defendants is at best indirect, incidental, and attenuated.  On this basis alone, Plaintiff has failed to state a claim for negligence on which relief could be granted.

Outside of Private Defendant's contractual obligations, contrary to Plaintiff's position, Private Defendant also cannot have an independent common law duty arising from being classified as a common carrier.  A common carrier in Virginia is defined as "one who, by virtue of his calling and as a regular business, undertakes for hire to transport persons or commodities from place to place, offering his services to all such as may choose to employ him and pay his charges."  *Carlton v. Boudar*, 118 Va. 521, 527 (1916).

Plaintiff's singular reliance on Virginia elevator jurisprudence proves unavailing.  While Virginia tort law has recognized actionable claims with respect to elevator injuries, these decisions have only extended to the *owners and operators* of elevators, and not in the context of a defendant tasked solely, in a contractual capacity, with elevator maintenance and repair.  *See, e.g.*, *White v. Sears, Roebuck & Co.*, 242 F.2d 821, 823 (4th Cir. 1957) (assigning a common carrier duty to "Virginia owners of elevators"); *Murphy's Hotel v. Cuddy's Admr.*, 124 Va. 207, 213-14 (1919) (describing an affirmative act taken by a hotel employee operating the lever of an elevator as a basis for assigning liability to a defendant in tort); *see also Bregel v. Busch Ent. Corp.*, 248 Va. 175, 177 (1994) (rejecting the view that an amusement park was a common carrier with respect to its gondola transportation system within the park because "it does not, as a regular business, undertake for hire to transport persons from place to place").  Here, Plaintiff

20

does not allege that Private Defendant has "undertake[n] for hire to transport persons" in the elevator.[3]

Adding to Plaintiff's pleading deficiencies, the Complaint is replete with the imprecise use of "and/or"[4] to describe Private Defendant's relationship with respect to the elevator, including alleging that Private Defendant "*controlled, owned, operated, supervised*, inspected, maintained *and/or* repaired the elevator." Dkt. 1 ¶ 13, 32 (emphases added). But after Private Defendant identified that it was not an owner or operator of the elevator, Plaintiff couched its defense in the presumption that Private Defendant did not own and operate the elevator. *See* Dkt. 61 at 11-12 ("An entity such as [Private Defendant] which provided inspection,

_____

[3] Although offering similar facts, Plaintiff's reliance on *Parker v. Elco Elevator Corp.*, 250 Va. 278 (1995) provides no positive law on which this Court could rely in finding plausible independent grounds for a tort either. This Court will not make new law from loosely drawn inferences in decisions focused entirely on the admission of testimony and evidence at trial, rather than the viability of the tort claim itself. Regardless, the facts of the *Parker* case are easily distinguished from those alleged in the instant Complaint. In *Parker*, the elevator maintenance contractor was alleged to have been "aware of two previous incidents" in which the elevator acted in a faulty and dangerous manner and because of that awareness, the elevator maintenance contractor was negligent. Here, Plaintiff has not made any specific allegations as to Private Defendant's knowledge surrounding the condition of the elevator and instead avers the conclusory and non-particularized statement that Private Defendant failed to properly inspect, maintain, and/or repair. *See E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts."). This fatal flaw is further evidenced by Plaintiff's reliance on out-of-state precedents interpreting non-Virginia law. While this Court will not spend pages explaining why non-Virginia law cases also prove uncompelling, Plaintiff's reliance on *Wyatt v. Otis Elevator Co.*, 921 F.2d 1224 (11th Cir. 1991) is instructive. In *Wyatt*, a contractor hired to maintain and repair an elevator was found liable to persons injured in the elevator when the contractor company "ha[d] notice or knowledge that should have alerted it to the need for repair." 921 F.2d at 1227-28. Again, Plaintiff has failed to plead any facts that would allow this Court to reasonably draw such an inference.

[4] As the Virginia Supreme Court observed in *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 615 n.3 (2019), the liberal use of "and/or" in a complaint is "a drafting blemish" and "self-defeating." Plaintiff's repeated use of the term in her Complaint adds to the difficulty of this Court's exercise in construing the allegations and any legal basis for Plaintiff's claims. Such a drafting approach is to be highly discouraged.

maintenance and repair work under a contract can be liable not only for breach of contract, but also for negligent actions and omissions under Virginia law."). On that basis as well, Private Defendant cannot be construed as a common carrier under Virginia law.

Additionally, the authorities cited by Plaintiff are predicated on the finding that the elevator or transport system exists within a public place. Plaintiff never alleges that the elevator exists within a public place. Drawing all reasonable inferences from the four corners of the Complaint, this Court would be remiss to disregard the fact that, through her employer's contract, Plaintiff worked for a United States intelligence agency and that access to such premises is highly likely to require secured credentials in a protected environment not open or accessible to members of the public.

Lastly, Plaintiff attempts to support his claim of negligence with bygone case law, leaving this Court unpersuaded that, based on the allegations of the Complaint, Private Defendant could bring a plausible independent action in tort. For example, *Boland v. Rivanna Partners*, 69 Va. Cir. 308 (2005) is a Virginia Circuit Court opinion that predates the Virginia Supreme Court's enunciation of the source-of-duty rule in *Tingler*. Indeed, the *Tingler* Court acknowledged the "'considerable confusion' in prior caselaw" related to the interaction between tort and contract law. 298 Va. at 92 (quoting Prosser & Keeton, at 666). *Boland*'s determination that an independent contractor could be held independently liable in tort for having not taken precautions to prevent a foreseeable injury stems entirely from non-Virginia law and involved a duty to members of the public. This principle simply does not accord with the more recent, controlling opinion in *Tingler*. *See, e.g.*, *id.* at 80 n.8 ("Our caselaw includes several examples of individuals held to be not liable in tort despite doing or not doing things that could foreseeably injure others.") (collecting cases).

22

Thus, because Plaintiff's negligence claim arises solely from the contract among Defendants, and because Private Defendant cannot be plausibly considered a common carrier, Count II of the Complaint also fails to state a facially plausible claim.

### 2. Count III

Plaintiff brings a negligence *per se* claim on the basis that Private Defendant neglected its duty to exercise the "highest degree of care" in meeting the standards contained in "BOCA National Building Code, the Council of American Building Officials, the Virginia Uniform Standard Building Code, the National Property Maintenance Code, the Fairfax County Code and all other applicable codes, laws and ordinances" when Private Defendant "fail[ed] to warn the Plaintiff about the dangerous, hazardous, and unsafe elevator." Dkt. 1 ¶¶ 30, 32.

Private Defendant argues that Plaintiff's negligence *per se* claim survives  by whether Plaintiff has adequately pleaded a common law duty owed to Plaintiff by Private Defendant. And because Private Defendant already argues that no such duty exists, Plaintiff's negligence *per se* claim is of no moment.  Even if Plaintiff did make a facially plausible claim that Private Defendant owed a common law duty to Plaintiff, Private Defendant maintains that Plaintiff has not pleaded with sufficient specificity which statutory provisions or enactments reinforce the duty Private Defendant allegedly owed to Plaintiff.

A negligence *per se* claim contains three elements: (1) the defendant violated a statute enacted for public safety; (2) the plaintiff belongs to the class of persons for whose benefit the statute was enacted and the harm that occurred was in fact the sort against which the statute was designed to protect; and (3) the statutory violation is the proximate cause of the plaintiff's injury. *Collett v. Cordovana*, 290 Va. 139, 148 (2015).  "The first and second of these elements are issues of law to be decided by a trial court." *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483,

23

496 (2011).  But to establish negligence *per se*, courts applying Virginia law look further and require the plaintiff to identify "a specific statute or regulation violated by the defendant" rather than "throw the kitchen sink of statutes and regulations at a defendant in the hope that someone will eventually figure out the particular statute or regulation the defendant violated." *Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 506-07 (E.D. Va. 2013), *aff'd*, 587 F. App'x 78 (4th Cir. 2014).

Here, Plaintiff has pled a myriad of potential theories of liability in the Complaint. Plaintiff's allegations are exactly the variety courts applying Virginia law have pinpointed as problematic because Plaintiff was well-equipped to identify the specific statute(s) implicated in the claim.  Instead, this blunderbuss approach is at odds with the requirement that litigants provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Equally instructive to this Court's review of Count III is the fact that this Court has already determined that Plaintiff has not pleaded a facially plausible claim that an underlying common-law duty exists in the first instance.  If that is the case, "the presence of a statutory standard of care [is] irrelevant." *Parker v. Carilion Clinic*, 296 Va. 319, 345 (2018).

Plaintiff leaves this Court with too many blanks to fill in; the Complaint still fails to adequately plead a factual basis for advancing a negligence *per se* claim.  Thus, this Court will dismiss Count III.

### 3.  Count IV

In addition to Plaintiff's claims sounding in tort, she also alleges a basis for recovery in contract as a third-party beneficiary to the contract between Private Defendant and Federal Defendants.  For that proposition, Plaintiff avers (1) the purpose of the contract between the Defendants included ensuring the safety for all invitees; (2) Plaintiff was intended to benefit

from the contract; (3) Plaintiff falls within the class of individuals who would have access to and would be using the premises and elevator where Plaintiff was allegedly injured; and (4) breach of the contract between Defendants directly and proximately caused Plaintiff's alleged injuries. Dkt. 1 ¶¶ 37-41.  Plaintiff expresses no qualms that the Complaint contains what Private Defendant classifies as a "formulaic recital of the essential elements of the third-party beneficiary cause of action" because, in her view, she need not provide any further factual detail "since negligence may be averred generally."  Dkt. 61 at 27.

Private Defendant argues that Plaintiff's contract claim fails because the Complaint does not allege that Defendants intended their agreement to confer a benefit upon similarly situated third parties as Plaintiff.  Indeed, third-party beneficiary contract claims must rest on Virginia Code § 55.1-119 (formerly codified as § 55-22).  That provision's requirement permits a third party to instigate a cognizable lawsuit for recovery so long as the contract is "made for the benefit, in whole or in part, of a person with whom it is not made[.]"  Va. Code § 55.1-119. Virginia courts have interpreted that provision to require that for a third party to bring a cognizable claim, the contracting parties must have clearly and definitely intended that the contract in question confer a benefit upon the third party.  *Collins v. First Union Nat'l Bank*, 272 Va. 744, 751 (2006) (collecting cases) (observing that Virginia courts "have consistently held that th[e] third-party beneficiary doctrine is subject to the limitation that the third party must show that the contracting parties clearly and definitely intended that the contract confer a benefit upon [the third party]").

Virginia Code § 55.1-119 (formerly § 55-22) entitles a plaintiff to pursue a third-party beneficiary claim in connection with a breach of contract involving other parties.  But the statute "has no application unless the party against whom liability is asserted has assumed an obligation

for the benefit of a third party" making said benefit more than "indirect[]" or "incidental[]." *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989) (citing *Valley Landscape Co. v. Rolland*, 218 Va. 257, 259-60 (1977)); *see also Valley Landscape*, 218 Va. at 262 ("[O]ne not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit."). "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver*, 238 Va. at 367. Moreover, "[d]amages for breach of contract" are generally "limited to the pecuniary loss sustained by . . . the third-party beneficiary." *Freeman v. Doubletree by Hilton*, 90 Va. Cir. 182, 2015 WL 10521433, at *7 (Apr. 17, 2015).

Accepting each of Plaintiff's allegations as true and drawing "all reasonable inferences" in Plaintiff's favor, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440, the factual allegations Plaintiff pleaded is insufficient to adduce a facially plausible third-party breach of contract claim. The Complaint alleges, with no factual background, that Defendants entered into a contract with the purpose of protecting parties like Plaintiff from injury. Indeed, the only reasonable inference which this Court may draw based on the allegations in the Complaint is that Plaintiff indirectly benefitted from the contract between Defendants. *See, e.g.*, *Allen v. Lindstrom*, 237 Va. 489, 500 (1989) (rejecting a third-party beneficiary claim on the basis that the plaintiff fell short of alleging that the agreement "'clearly and definitely' intended to confer a benefit upon prospective purchasers"). Plaintiff identifies no provision within the contract involving Defendants that supports her claim that she is a third-party beneficiary of the contract. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Even if Plaintiff did plead her complaint satisfactorily, her alleged damages are entirely derivative of physical injury and not pecuniary loss directly from a contract breach.  As the *Freeman* court held, "[t]o the extent [Plaintiff] seeks tort damages, such damages typically are not available in a breach of contract claim and therefore are unavailable to a third-party beneficiary of a contract" unless there is a "tortious or negligent breach of a common law duty." *Freeman*, 2015 WL 10521433, at *7 (citing *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 266-67 (2009)); *see also Oden v. Conway*, 47 Va. Cir. 106, 111-12 (1998) (holding that "[s]uch injuries resulting not directly from a breach of the contract, but from physical conditions existing apart from the contract, which the contract merely undertook to eliminate, cannot well be regarded as a proximate result of the breach of the contract, within the contemplation of the parties at the time" of contracting).  Plaintiff's alleged injuries stem solely from her physical injuries while riding in an elevator.  They fall short of the sort of commercial injury which Virginia's third-party beneficiary recovery statute is meant to capture.  And given this Court's earlier determination that Plaintiff has not made a facially plausible claim as to a breach of a common law duty, Plaintiff has no backstop to sustain his breach of contract claim.

Accordingly, this Court dismisses Count IV as Plaintiff has failed to state a claim upon which relief may be granted.

### 4.  Count V

Compiling her allegations in the prior negligence counts of the Complaint, Plaintiff's fifth count entails a claim against Private Defendant for *respondeat superior*.  Private Defendant counters that a *respondeat superior* claim asserts no cognizable cause of action separate and apart from Plaintiff's already advanced negligence claims.

Count V is simply a restatement of the allegations underpinning Plaintiff's negligence claims with the addition of new legalese that is otherwise redundant to Plaintiff's position.  *See, e.g.*, Dkt. 1 ¶¶ 26-27, 31, 33 (alleging that Private Defendant is liable for negligence in acting through its "agents, contractors, employees, representatives, and/or servants").  Therefore this Court dismisses Count V in line with its findings as to Counts I, II, and III.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Private Defendant's Motion to Dismiss (Dkt. 6) is GRANTED; and it is

FURTHER ORDERED that Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 22) is GRANTED; and it is

FURTHER ORDERED that Federal Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 23) is DENIED AS MOOT; and it is

FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE as to both the Federal Defendants and the Private Defendant.

The Clerk is directed to forward copies of this Order to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 30, 2022

/s/

Rossie D. Alston, Jr.
United States District Judge

28